**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>v.<br><br>Bo Lane,<br><br>           Defendant. | No. CR-18-08295-001-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Bo Lane's Motion for New Trial (Doc. 207).[1] For the reasons that follow the motion is denied.

## BACKGROUND

In the initial indictment, filed on August 28, 2018, Mr. Lane was charged with four counts—two counts against victim E.B. that occurred in the two-year period between September 2014 and September 2016 and two against victim J.B. that occurred in the approximately one-year period from 2015 to 2016. After denial of Defendant's initial motion to dismiss on equal protection grounds and during the briefing of other pretrial motions, the United States filed a superseding indictment on May 8, 2019. (Doc. 76.) In addition to making moderate amendments to the existing counts, the superseding

---

[1] Plaintiff's Unopposed Motion to Continue Oral Argument on Defendant's Motion for New Trial (Doc. 223) to late November or December 2023 was vacated by the Court's Order (Doc. 224). The parties have had an adequate opportunity to discuss law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

indictment added two additional counts as to victim E.B. and one additional count as to victim J.B. Two of the new counts alleged that the victims had oral sexual contact with Defendant's penis sometime between September 2016 and September 2017.

At approximately the same time, the prosecution turned over to the defense two untested dark hairs that were apparently found in debris collected from E.B.'s genital area during her initial forensic exam with Nurse Suzanne Clinton on October 1, 2017. The hairs had not been tested by the government. And, no party requested a postponement in trial pending the testing of the hairs.

Trial on the superseding indictment began on June 11, 2019. At trial, Defendant cross-examined Special Agent Morgan and Nurse Clinton about the government's failure to test the hairs. The Defendant asserted, among other things, that this failure demonstrated that the government had not conducted an adequate investigation into the crime. Defendant was, nevertheless, convicted on all seven counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2). Defendant was sentenced to 432 months incarceration, and his conviction and sentence were affirmed on appeal.

Eleven days after the trial, the Defendant requested that the United States actually test the hairs. The government did so. The test revealed that one of them came from an animal, and the other was "[a] pubic hair exhibiting characteristics of Asian or Native American ancestry . . . [and was] microscopically dissimilar to the hairs in the pubic hair sample from Bo Lane . . . Accordingly, . . . Bo Lane cannot be included as a possible source of this hair." (Doc. 207-1 at 2.) The test results were disclosed to the Defendant on the same day they were received by the government—August 10, 2020. (Doc. 212, Exhibit C.)

The Defendant now moves for a new trial pursuant to Fed. R. Crim. P. 33. But in his Reply, he makes it clear that his motion is not, in fact, based on the discovery of new evidence but on the government's *Brady* violation due to its late disclosure of untested hairs.

## ANALYSIS

The original disclosure of the hairs, as Defendant points out, was none too timely. Yet, the disclosure was made nineteen days before trial, and the existence of the hairs was not relevant to any of Defendant's pretrial motions. "*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial. To escape the *Brady* sanction, disclosure must be made at a time when disclosure would be of value to the accused." *United States v. Gordon,* 844 F.2d 1397, 1403 (9th Cir. 1992) (quoting *United States v. Davenport,* 753 F.2d 1460, 1462 (9th Cir. 1985) (internal punctuation omitted)). Even assuming that the disclosure of the evidence might have been so untimely as to have otherwise violated the Defendant's due process rights, the cure is the same. "[S]uch a due process violation may be cured, . . . by belated disclosure of evidence, so long as the disclosure occurs 'at a time when disclosure would be of value to the accused.'" *United States v. Gamez-Orduno*, 235 F.3d 453 (9th Cir. 2000) (quoting *United States v. Span*, 970 F.2d 573, 583 (9th Cir. 1992) (quoting *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988))).

In *Gamez-Orduno*, for example, the government had not disclosed, prior to a suppression hearing, the record of a free talk with a testifying defendant that contradicted the government's position at the suppression hearing. At the suppression hearing, Defense counsel acquired the impression that the government had not disclosed such information. When the information was disclosed, the district court determined that the suppression constituted a violation of the defendant's due process rights. However, the hearing was continued for two months until such time as the defendant could assimilate it, and the hearing was renewed. Under such circumstances, there was no *Brady* violation that had not been adequately cured.

Here, the Defendant does not successfully demonstrate that the government had an obligation to independently test the hairs. Most of the acts making up the various counts of which Defendant was convicted occurred at least one year before the hairs were collected. Neither of the two acts first charged in the superseding indictment that were

- 3 -

close to the time of the hair's collection involved any contact with the victim's genitalia. So, the existence of the hairs in the debris of the victim's underwear would not have been especially inculpatory to the acts charged even if they had proven to be the Defendant's given the other facts of this case.  The victim underwent a previous total physical assessment, including an assessment of her genitalia in Page, shortly before the physical assessment in Flagstaff, at which the hairs were found.  That previous assessment, together with the fact that one of the hairs was an animal hair, in combination with the victim's compressed living circumstances, suggest a number of different reasons why the hair was not material to the guilt of the Defendant on some or all of the various charges.

But, again, in light of Defendant's withdrawal of his Rule 33 analysis, the question is not materiality.  Nor, in light of the government's disclosure, is it whether the human pubic hair, once tested, was exculpatory.  The question is whether there was any reason why the government would be obliged to test the hairs to comply with its *Brady* obligation. The Defendant fails to demonstrate that it was.

Certainly, had Defendant wished to do so, he would have received a trial postponement so that the hairs could be tested if that would have been his strategic choice. And postponements are a common way of dealing with disclosures that are made during or too close to trial.  *See, e.g.*, *United States v. Mathur*, 624 F.3d 498, 506 (1st Cir. 2020) (noting continuance is the customary remedy for midtrial *Brady* violation, and, more specifically, "the failure to ask for a continuance [indicates] that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously."); *see also United States v. Tarantino*, 846 F.2d 1384, 1417 (D.C. Cir. 1988) (production during trial was reasonable where defendant had the opportunity to use the materials).  The Defense's failure to have the hair tested before trial does not necessarily indicate that Defense counsel lacked diligence.[2]

---

[2] The government notes the remoteness of the hair discovery from any of the acts charged in the indictment, the successive physical assessments performed on the victim, that one of the two hairs came from an animal, and the reality of the victim's living circumstances to suggest that the presence of the hairs was not material.  Nevertheless, the Court need not consider the materiality of the evidence in light of Defendant's decision not to pursue it.

By not testing the hairs, Defendant avoided any risk presented by the possible results, and yet the existence of the untested hairs remained of value by calling into question the thoroughness of the government's investigation. In this case, Defendant knew of the untested hairs and elected to use them in this manner as opposed to seeking their testing for exculpatory purposes. Thus, Defendant is prohibited from seeking a new trial based on the result of the testing. *United States v. Velte,* 331 F.3d 673, 680 (9th Cir. 2003).

In *Velte,* napkins were identified that were believed to be the source by which the convicted defendant set fire to a national forest. Testing of the napkins to determine whether they matched other napkins found in the defendant's car at the time of the fire was not completed prior to trial. Instead of requesting that such testing be completed prior to trial, the defendant "exploited the absence of the testing results to his advantage during cross-examination of [the investigating officer]." *Id.* After trial, when the tests were completed, the napkins that were believed to be the source of the fire did not match the napkins in the defendant's car at the scene. Defendant both moved for acquittal and asked for a new trial. The trial court granted the defendant's motion for acquittal but denied his request for a new trial.

In reversing Velte's acquittal but affirming the district court's denial of a new trial, the Ninth Circuit noted, "[w]e are loath to grant a new trial on the basis of any such tactical decision to postpone testing." *Velte*, 33 F.3d at 680 (quoting *United States v. Sitton*, 968 F.2d 947, 959-60 (9th Cir. 1992), *abrogated on other grounds by Koon v. United States*, 518 U.S. 81, 96-100 (1996). The result here is the same. Having known of the evidence but electing to use it to argue that the investigation was incomplete rather than seek testing of the evidence, the Defendant cannot now argue for a new trial based on a *Brady* violation or newly discovered evidence.

/ / /

/ / /

/ / /

**IT IS THEREFORE ORDERED** that Defendant's Motion for New Trial (Doc. 207) is **DENIED**.

Dated this 9th day of August, 2023.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge